Good morning and may it please the court. Your honor, if I may, I'd like to reserve three minutes of my time for rebuttal. Yes. Your honor, this is an appeal by Mr. Delgado of a sentence imposed by the district court of 72 months of imprisonment. That sentence exceeded even the United States sentencing guidelines, sentencing range calculated by the court that was erroneously calculated. Mr. Delgado-Sanchez now seeks reversal of that sentence and remand with instructions from this court as to the proper calculation of this guidance. Is this covered by the waiver? I don't believe so, your honor, no. Why not? Well, Mr. Delgado-Sanchez, a waiver requires that there be an intentional relinquishment of a known right. And here we have the government asserts that Mr. Delgado's failure to raise objections to the pre-sentence report or to the sentencing calculations of the judge below not only affects a waiver in that proceeding, but also affects a waiver of his right to review of that calculation on appeal. It's our contention that this court's prior rulings with regard to waiver don't reach that far. In fact, the cases cited by the government and also referred to by Mr. Delgado in his reply brief address this very issue, where objections to the PSR and sentencing issues haven't been raised below and plain error review applies. Indeed, if a waiver or a failure to object below always resulted in waiver, then plain error review wouldn't be necessary. And indeed, this court recently in Castro-Vazquez reviewed almost identical issues with regard to a robbery statute and noted that where there was no objection below, plain error review should apply here. And Mr. Delgado concedes that that would be the standard of review under these circumstances. It's Mr. Delgado's position that the district court's numerous errors below constitute plain error. He contends that there was both procedural deficiencies in the district court's sentencing and that the sentence ultimately imposed was substantively unreasonable. Those procedural deficiencies in the district court's sentencing and the court's erroneous calculation of his criminal history points, as well as the court's subsequent variance in his sentence based on reliance on prior dismissed conduct, including in particular conduct that was dismissed twice because there was an absence of probable cause to support the charge. And finally, those procedural errors were compounded by the fact that the district judge failed to confirm with Mr. Delgado that he had reviewed the pre-sentence report with his attorney in advance of sentencing. And that's significant in this case because the pre-sentence report, although there were no objections by the government or Mr. Delgado to the initial PSR, the final PSR issued on the day of Mr. Delgado's sentencing, and it contained substantive changes to the calculation of his guidelines, in particular with regard to his criminal history. But is there any claim that any of those in the amended, that anything added in the amendment was erroneous? There was a September conviction, so they added that in. Is there a claim that that conviction didn't occur? There is no such claim, Your Honor, no. But there was also a change in the calculation of the already calculated criminal history points. There was a prior conviction that in the initial PSR received, I believe it was plus one, and that was removed because there was consolidation of those sentences in the court below the state court and there was no intervening arrest. So the PSR that the parties were reviewing at the time of sentencing was different in substantial ways from the PSR that was initially presented. But the more significant issue for Mr. Delgado in his sentence here is the initial error by the court in determining that he should be sentenced as an individual who had on his prior criminal history a conviction for a crime of violence. I'm sorry, I didn't hear you. A prior conviction for a crime of violence. The district court found for a crime of violence, and let me go back and note that the pre-sentence report did not specify a particular prior conviction that U.S. probation considered to be a crime of violence warranting a two-level increase in the total offense level applicable to Mr. Delgado under 2K2.1 of the guidelines. At sentencing, the district judge determined that Mr. Delgado had a prior crime of violence and stated that that prior crime of violence was robbery and brandishing a firearm during the robbery. That's not an offense as far as I know under Puerto Rico law and it's not an offense that specifically appears on Mr. Delgado's criminal history. Mr. Delgado has a number of prior convictions for brandishing or discharge of a firearm under Article 5.15 and a number of convictions for robbery under Article 198, but there is no conviction for discharge or brandishing, pardon me, a firearm during the course of a robbery. And that's significant here because the assessment that this court has to make and the assessment that the district court is supposed to make in the context of a sentencing in determining whether a prior offense is a crime of violence is an analysis of the elements of that offense. It's a particularly complicated area of sentencing and even with recent guidance from the Supreme Court, it seems as though the complications are now flooding from the residual clause into the force clause. Okay, so if he had been convicted of either robbery or brandishing under the commonwealth statute, applicable commonwealth statute, wouldn't either one of those qualify to give him the point that he got, the two points that he got? The two level enhancements? Yes, the enhancements, yes. So as an initial matter, we would contend that the district judge's error in identifying a crime that doesn't exist on the statute or in Mr. Delgado's history is warrants reversal. Was that really an error? I mean, there was a single event on the face of the earth where he went in, robbed someone, and in the course of robbing, pointed the gun at someone. And so the district court described that as robbery and brandishing. It was a robbery conviction and it was a brandishing conviction, was it not? But that's looking to the brute facts of the matter, which is something that the district judge is not permitted to do. Well, it's looking to it unobjected to a description of certified court documents. But that looking to court documents is permitted under the current standard only where the elements are unclear, whether or not the offense can be committed as a crime of violence and a non-crime of violence. I don't think we get that. I'm still one step back. He was convicted of robbery and he was convicted of non-crime. I'm coming back to that. I haven't yet agreed to that, your honor. But I think that it's probably something that we would have to concede. My point was that neither one of those were able to concede. Why would he have to do anything more? Well, because first, the district judge didn't sentence him based on a robbery or a brandishing conviction. Second... Okay, so assume for a second we don't agree with your characterization of what the district court did. Let's move on to this. Right. Okay. We don't concede that robbery or brandishing constitute crimes of violence. I would like to hear your argument on brandishing. It seems to me that it is a divisible statute and that he was convicted under Section 2. Your honor, so the key element or the key issue under brandishing is that there's very little guidance in Puerto Rico law below. But the draft jury instructions... What kind of guidance do you need for brandishing a weapon in the middle of a robbery? Well, the offense isn't brandishing in the middle of a robbery. The offense is brandishing or discharge of a weapon. And it can be committed when a person willfully fires a weapon in a public place where nobody's harmed or intentionally, although without malice or poor thought, points a weapon towards a person even though the defendant causes no harm whatsoever. So that's Section 2. That's the section I'm focusing on. Yes. And that section can be violated even without the person knowing that they've had a firearm pointed at them. The elements don't require that the individual be placed in fear that there be an attempt or some other communication of an effort to cause harm. The essential elements under the... So those are really just manner and means is our position because the jury instruction says the essential elements of this offense are, one, aiming, discharging a weapon, firearm. Two, in a public place or any other place where a person could suffer harm. It's our contention that this is a statute that's overly broad, that encompasses conduct that can both be violent, that could place somebody in fear, but also conduct that can be nonviolent. And that the essential elements do not require that a person have engaged in purposeful use of violent force on the person of another. But the guideline included threat of use of violent force. And wouldn't pointing a weapon at someone constitute a threat, whether or not they perceive the threat? Well, a threat is defined as the communicated threat of harm or otherwise. A threat can't be something that is not communicated. And here the elements of this offense don't require that there be a threat. An individual can be convicted of this offense by simply discharging a firearm from a car or in a public place. Where is that definition of threat that you're relying upon? Your Honor, I'm sorry, I have that. I believe in our reply brief, but I don't have the direction to that here. Your Honor, so it's our position that brandishing on the elements, not the facts of Mr. Delgado's circumstances, but on the elements doesn't constitute a crime of violence, and neither does robbery. The Puerto Rico court has been abundantly clear that a robbery can be committed by the slightest of touching, that a snatching of a purse or taking a watch after asking to see it can constitute a robbery. That is not violent force as required for a robbery under Puerto Rico law to be a crime of violence. It's our contention that that statute is not divisible, and the jury instruction is elucidating there as well. The jury instruction for robbery says, although the law requires that the taking or appropriation be done by way of violence or intimidation, it is not necessary that both be used. And in fact, the jury instruction suggests... I see that my time has run out, Your Honor. Thank you. I'll rely on my brief. Good morning, Your Honors. May it please the Court, my name is Maynan Schwartz, representing the United States. There's good reason to infer a waiver here of this argument, not only because he failed on multiple occasions to object to the PSR and failed to object to the sentencing court's articulation of the prior crime of violence at sentencing, but also because the record allows this court to infer that he had a very good strategic reason for not drawing attention or asking the court to focus on the finding of a crime of violence. Why is that? Because there's a very good chance that had he done so, the district court would have found that he in fact had two crimes of violence, which would have resulted in a higher guidelines calculation. And the reason we can infer that is because at the change of plea hearing, the government articulated the parties' joint good faith calculations of the sentencing range. And working backwards from what that sentencing range was, you can tell that they thought that he would have a base offense level of 24, which is what the guidelines specify as the base offense level when you have two prior crimes of violence. Put differently, by the time he got the PSR and appeared at sentencing, he thought he'd benefited from the crime of violence calculation that only had one. And so to submit to the court that it should make further findings on the record about what that crime of violence was could have backfired on him and led to a higher guidelines calculation. What basis was there in the record that would have allowed the court to find another crime other than brandishing would have been the crime of violence? Were there additional Shepherd documents? There are not additional Shepherd documents in this case, Your Honor, mostly because he didn't raise any objection to the characterization of his record. So you're positing that if he'd filed a written objection to the PSR saying that brandishing isn't a crime of violence, that the government may then at that point have submitted further Shepherd documents? Correct, Your Honor, and that's consistent. Is this speculation or do we... no one has put any Shepherd documents before us? That's correct, Your Honor, there are no Shepherd documents in this case. Are you representing that the Shepherd documents would have in fact shown another crime of violence? The government would have at least had the opportunity to show that. What we do have is the PSR, which lists several convictions for robbery and several Article 515 convictions. And so if any two of those would suffice, he would get the second enhancement and have, again, a higher guidelines calculation. So a strategic move on his part to refuse to challenge the characterization of his record as having one crime of violence is not something he should now be able to benefit from a second time on appeal. That intentional relinquishment, it makes this case an even stronger one for waiver than in Trivides-Leonardo, which this court did find waiver without that additional sort of strategic basis for failing to object. The appellant mentioned during his argument that one of the errors he objects to is that the defendant wasn't asked if he had had an opportunity to review the PSR. And I would just like to emphasize that there is no argument of prejudice for that whatsoever. He doesn't argue that he was unaware of anything in the PSR or that if he had had the opportunity to discuss it that anything would have come from it. There's simply no argument as to prejudice, which means it fails the third prong of plain error review. It just simply doesn't suffice for plain error. And if we set aside the waiver argument for a moment and we analyze even the crime of violence finding under plain error, there's similarly a lot of hurdles that he faces. The most important one the government submits is prong two, that it must be a clear or obvious error. That means if reasonable minds could differ about whether aiming and discharge is a crime of violence or whether robbery is a crime of violence, that's not a clear or obvious error. And that fails prong two. Can you talk about that with respect to robbery? If we are bound by the Puerto Rico court's interpretations of their own statute, and there's at least the one case where I believe it's the Supreme Court of Puerto Rico says, I don't know what the translation is, but what I've seen in English is force, and it can be force however slight with respect to robbery. So what's your argument on that? If we look at what Johnson 1 said about force, they were interpreting violent felony and they were considering whether a Florida statute qualified as a prior violent felony. The appellant would have you believe that that Florida statute and the Puerto Rico robbery statute are similar in terms of what kind of force they required, but that's simply not the case. The Florida statute was actually a misdemeanor statute that made it a felony only if you had a prior battery conviction. So it was a misdemeanor, slightest offensive touching statute. And one of the examples that the Supreme Court gave in analyzing that case is it could be violated by merely a tap on the shoulder that was unwanted. In contrast, the Puerto Rico Supreme Court, although they do use the phrase slightest use of force in the sentence immediately preceding that, talked about what force meant and said it's been a longstanding thing that we've talked about before, that the force has to be sufficient to cause a person to surrender their property in the context of robbery. The government submits that it's pretty clear that a tap on the shoulder is not sufficient force to cause a person to surrender their property. But how about snatching a purse? So the amount of force that is required to snatch a purse from a person's possession, the government submits, is force sufficient under Johnson. So you're saying if someone were tried for snatching a purse, they would be entitled to a jury instruction that the jury should acquit even if it finds it walked up behind the purse and snatched the purse out of their hands and walked away if it didn't require a lot of force because the person wasn't grasping the purse heavily? I don't see anything. It seems Puerto Rico expressly opted for the minority view on robbery and purse snatching, no matter how much force is used, is it. Not no matter how much force was used. Well, enough to snatch the purse, but it doesn't have to cause pain or injury. It doesn't have to cause it, but it must be sufficient to have caused, if that makes sense. So when you snatch a purse from someone, you are exercising an amount of force that could cause them pain. It's more than the slightest offense of touching. So you're saying they'd be entitled to an instruction that the jury should acquit unless the amount of force used to snatch the purse was great enough not just to achieve dominion over the purse, but to also cause pain or injury? That sounds correct, Your Honor. And what Puerto Rican case says that? So if we look at Lucret King Yonez, which is the other Puerto Rico Supreme Court case addressing robbery, and I do want to be clear that this is Article 173 robbery, which is a different article from the one that was passed later. I submitted a 28-J letter to try to clarify the matter there. But they talked about that both modalities of violating the robbery statute represent the potential for serious harm to human life. And Batista Montañez did not overrule Lucret King Yonez. So that is still the binding precedent of the Puerto Rico Supreme Court as to the harm that robbery represents under either modality, which should lead this court to conclude that it is a categorical crime of violence. What do you say about the brandishing? I think the argument, as I understand it, on brandishing is that you could point and be convicted, but the person not know and threat under the federal law requires knowledge. So I have two responses to that, Your Honor. First, the appellant doesn't point us to anything from the Puerto Rico Supreme Court saying that that is what's required there, that the knowledge of the is or is not. We don't know how the Puerto Rico Supreme Court would answer that question. If we read the statute, there's certainly nothing. It just says intentionally, although without malice or forthright, points a weapon towards a person. And so in that case, Your Honor, I would ask this court to look at the Supreme Court's opinion in Duenas-Alvarez. And it's also been talked about in the Hill case in the Second Circuit, finding that Hobbs Act robbery was a prior crime of violence. And basically what it says is this examination of what the statute requires to violate it shouldn't just be an exercise in legal imagination. The mere fact that we can come up with a hypothetical that we think might violate the language of the statute doesn't matter unless the appellant can bring a case or cases his own or others where the statute has actually been applied in that way. And again, in this case, we don't have any reason to believe that people are charged with robbery with its prior. We've never applied that. And it would be particularly inept to apply that sort of reasoning in Puerto Rico, where we really wouldn't have the capacity to determine what charges have been brought in the Puerto Rican courts over the last 10 years that never resulted in appellate opinions. There could be dozens of cases where someone pointed a gun, and the statute was just followed as it reads, and we wouldn't know about it. And I think in White we said that that's a problem. I think what's key there, as your Honor said, there could be dozens of cases. It's equally true that there could be zero cases. And in this case, because at most we're on plain error review, I don't think it rises to the level of a clear or obvious error. So under the Serrano Mercado and Rios Hernandez line of cases, Delgado's appeal can only succeed as to this crime of violence challenge if this court is confident that at the time of appeal, none of his prior convictions qualified as a crime of violence under either the categorical or the modified categorical approach. This court would have to make findings to exclude all of those convictions before his appeal could proceed to the analysis of the third and fourth prompts. Let me bring you back to my prior question. I believe what you're telling us is that pointing with a person not knowing is not enough under Puerto Rican law. Assume for a moment that we don't agree with that. Then we get to the argument that we're told is in the reply brief that under federal law, a threat that is needed to establish a crime of violence must be some act that induces fear or is at least known by the victim. I'm sorry. Could you just look at the question? Sure. Let's assume Puerto Rican statute doesn't require knowledge of the victim. It requires merely intentionally pointing a gun at the victim and the victim might not know it. And I believe the defendant's argument is therefore that's not a crime of violence because it's not a use of force, it's not an attempted use of force, and it's not a threatened use of force unless the person knew it. In that instance, if we had reason to believe that that was the case, that it could be violated by that, I believe the government would concede that that could be violated by something that's not a use of force under Johnson or a threat of force under Johnson. However, there's still the discharge, and I would point this court to the PSR, which in one of his other prior convictions does say that he discharged a weapon. So there's reason to believe that he may have been convicted under both modalities in different convictions. Would a specific site be helpful to that? Well, with the discharge, then you're under subsection 1, you're under A1, and the elements of that include negligence or recklessness. Willfully fires any weapon in a public place. Right, but you could just point it up in the air and fire it, and the harm caused could be reckless or negligent, not intentional, and then you've got a problem under FISH and several other other holdings. So because it's limited to a public place where the person who fires can't be sure that there's no one around who could be harmed. Sorry, let me back up one second. I don't believe that the Supreme Court has ruled on whether recklessness is sufficient. But isn't firing a gun in the air, and then someone is negligently harmed as a result, enough to result in a conviction under A1? The Supreme Court has made clear that negligent conduct, is plainly not enough. Correct, Your Honor, but willfully firing a weapon in a public place, or in a place where someone could be harmed, is not negligent, it's reckless, at the very least. And I think that you can gather some of the Puerto Rico view on this, if you continue further down in Part C. Now of course this is not what the defendant was convicted under, and this is not, it is a divisible statute, so we're not arguing that C is relevant for the purposes of determining his crime of violence. But in terms of looking at how Puerto Rico views the firing of weapons, where people can be hurt, and the seriousness and the threat that that poses, Part C says, indiscriminately discharging a firearm from a motor vehicle, constitutes utter disregard for human life. And so I think that that goes to just the way that Puerto Rico has struggled with the problems of gun violence. There have been issues with people firing guns into the air,  and so I don't believe that the Puerto Rico Supreme Court would agree that discharging a weapon into the air in a public place is not the use of force. What's your answer to the defendant's reliance on Castro-Vasquez? I see that my time is up, may I respond to your question? So Castro-Vasquez dealt with the singular issue where between sentencing and appeal, the Supreme Court had made law that turned the district court's analysis into something specifically inappropriate. And just to clarify that, so de Compte came down and said, you can't look at the facts of what he did, you have to look at what the statute itself prohibits. And Castro-Vasquez at sentencing, the court had done the opposite of that. So the court's approach later became illegal, if you will, inappropriate. And so that's not what we have here. There's no intervening case law that changed the way the court should analyze it. And I think it's telling that in Castro-Vasquez, this court said the mere failure to follow de Compte might not rise to plain error. And that's what we have here, a failure to follow de Compte that does not rise to plain error. Thank you. Thank you, Your Honor. With regard to the robbery issue, I would like to point out a couple of things. Lucret Crinones addressed 173 robbery, not 198 robbery, and under a prior statute. The government submitted a Rule 38 letter suggesting that the statute hasn't changed in Spanish and that more than the slightest force is required under the robbery statute that Mr. Delgado was convicted of. That's simply not the case. The jury instruction defines violence as understood to mean any use of force, even the slightest, is sufficient. That's clear from the jury instruction, and Batista-Montanez is the controlling authority under the existing statute. I would suggest to the court that the difference in the wording of the English translation in the Spanish statute arises from the fact that an interpreter or translator has to try and find the word in English that most reflects how the word is being used in Spanish. And in this instance, given Batista-Montanez and the jury instruction, force is more appropriate in English than violencia under Spanish because it reflects the court's rulings with regard to the level of force needed under the statute. How do you address the prejudice problem under plain error review when it comes to the crime of violence issue? In other words, I don't understand your brief or your presentation to be putting forward any shepherd documents. Correct. Or even to be in a position to represent that a review of the shepherd documents would in fact result in a categorization favorable to the defendants under each of the divisible branches that are applicable here. So how do you get around the prejudice problem? Well, the first I would say, Judge, is that we don't concede that these are divisible statutes. The brandishing statute talks about different manners and means of firing a weapon. Let's assume we find that A2 and A1 are divisible under the discharge of important firearms. How do you get around the prejudice? Well, the error that the judge committed increased his sentencing level, which led to a higher potential guideline sentence. And that's the framework and the starting point for even the various. So that impacts his substantive right, his liberty interest, and arguably resulted in a higher sentence resulting in prejudice. And it also casts into question the public integrity of the sentencing process. But the proposition is if you accept, let's assume for a moment we have a divisible statute. Let's assume for a moment that under one branch of the divisibility it is a crime of violence and under the other it isn't. The proposition would be that had you objected below, then the Shepard documents would have been brought forward and the Shepard documents would not have advanced the government's position as to which branch you're under. How do you advocate that now on appeal? Well, I think that the obligation of the district judge to get the sentencing guidelines correct is an obligation that exists regardless of whether there's an objection. The government was perfectly within its bounds to bring forward Shepard documents to address that issue with the court. The absence of Shepard documents from our viewpoint is immaterial because there is no basis to resort to the Shepard documents at sentencing, Your Honor, because we believe that firing the gun in a public place or pointing the gun and not firing it or firing the gun in a non-public place but from a moving vehicle are all means of committing the offense of discharge or brandishing a firearm, which is described in the jury instructions as a non-divisible offense. And so the absence of Shepard documents or the presence of Shepard documents or an objection below doesn't change the fact that the district judge exceeded what would have been the appropriate and what is the appropriate sentencing guidelines by firing that there was a crime of violence here. That's a fine position to be taking on appeal, assuming that the review was for plain error. But the government, in its argument that there was a waiver here, at least I took the government to be suggesting there may have been a lot of reasons why counsel below, representing his or her client, may well not have wanted the court to see any Shepard documents. So what should we be doing about that? Well, I think the difficulty with that argument is that if the parties came forward and said it was a 24 offense level and they were operating under presumption that there were two priors and the PSR says that there's one prior, the government raises no issue as well at sentencing if there were truly two priors. And I just don't think that that's an indicator of a strategic approach. There was no comment by defense counsel at the sentencing hearing whatsoever. If there's, I mean, the records that are available suggest a rather long list of convictions. Do they not? There's a number of convictions. Okay. So if the parties only talk about one, the probation department only talks about one, why can't it be inferred from that that there may be a reason why the rest of them are not being brought forward? Now, it could be because there's nothing there. But it could just as well be that they don't want to have the court spend its time digging into the Shepard documents. But now probation's brought into this strategic decision as well, where probation's only saying there's one. There's multiple discharge brandishing, there's multiple robberies, and yet they're only talking about one. And the district judge points out brandishing during the course of a robbery. So my point is we don't know what was going on. And here we are on appeal. At best, it's plain error review. Why should we assume all of those things in the favor of the defendant? I'm going back to your point that, hey, if the government wanted the court to see the Shepard documents, it should have brought them forward. See, we're at a bit of a disadvantage here. I agree, Your Honor. And I think that we're limited to the record in what we have. And the record here from our position simply shows that the district judge found a crime of violence that doesn't exist in his history or on the statute and quite clearly found it by going to the brute facts. We argue that there was no need to do so because they're not divisible statutes and that that error resulted in an elevated guideline sentencing calculation from which the judge then varied upward, depriving the defendant of his liberty on an even greater level, which we contend affects his substantive rights. Thank you.